1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## EASTERN DISTRICT OF CALIFORNIA

10

11  LORENZO FOSSELMAN,                  )     1:05-CV-00119 AWI SMS HC
                                        )
12              Petitioner,             )
                                        )     FINDINGS AND RECOMMENDATION
13       v.                             )     REGARDING PETITION FOR WRIT OF
                                        )     HABEAS CORPUS
14                                      )
    RICHARD J. KIRKLAND, Warden,        )
15                                      )
                Respondent.             )
16  _____)

17

18      Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

19  pursuant to 28 U.S.C. § 2254.

20                              **BACKGROUND**

21      Petitioner is currently in the custody of the California Department of Corrections pursuant to

22  a judgment of the Superior Court of California, County of Madera, following his conviction by jury

23  trial on January 14, 1999, of two counts of robbery (Cal. Penal Code § 211), two counts of assault

24  with a deadly weapon (Cal. Penal Code § 245(a)(1)), and one count of carjacking (Cal. Penal Code

25  § 215(a)). See Lodged Doc. No. 1.[1] In addition, allegations that Petitioner had previously suffered

26  two serious or violent felony convictions within the meaning of California's Three Strikes Law (Cal.

27      _____

[1]"Lodged Doc." refers to the documents lodged by Respondent with his response.

28

1   Penal Code § 667(b)-(i)) were found to be true. Id. On January 14, 2000, Petitioner was sentenced to

2   serve a term of twenty-five years to life with possibility of parole consecutive to a term of twenty-

3   seven years to life with possibility of parole. Id.

4          Petitioner filed a notice of appeal to the California Court of Appeals, Fifth Appellate District

5   (hereinafter "Fifth DCA"). On July 6, 2001, the Fifth DCA conditionally reversed the conviction and

6   remanded the case back to the trial court to conduct a hearing on a motion for new trial to determine

7   whether Petitioner had been denied effective assistance of counsel. See Lodged Doc. No. 4. On

8   remand, the trial court determined Petitioner had received effective assistance of counsel and

9   reinstated the judgment. Petitioner again appealed to the Fifth DCA. Appellate counsel filed an

10  opening brief pursuant to People v. Wende, 25 Cal.3d 436 (1979), requesting the appellate court to

11  independently review the entire record. See Lodged Doc. No. 5. On March 17, 2003, the Fifth DCA

12  affirmed the judgment. See Lodged Doc. No. 6.

13         On May 20, 2003, Petitioner filed a petition for review in the California Supreme Court. See

14  Lodged Doc. No. 8. The petition was summarily denied on June 25, 2003. Id.

15         On September 16, 2003, Petitioner filed a petition for writ of habeas corpus in the Madera

16  County Superior Court. See Lodged Doc. No. 9. The petition was denied on October 9, 2003. Id.

17         Petitioner then filed a petition for writ of habeas corpus in the Fifth DCA on November 17,

18  2003. See Lodged Doc. No. 10. The Fifth DCA summarily denied the petition on November 25,

19  2003. Id.

20         On December 12, 2003, Petitioner filed a petition for writ of habeas corpus in the California

21  Supreme Court. See Lodged Doc. No. 11. The petition was summarily denied on September 29,

22  2004. Id.

23         On January 20, 2005, Petitioner filed the instant petition in the Sacramento Division of the

24  United States District Court for the Eastern District of California. Following an order of transfer on

25  January 28, 2005, the instant matter was transferred to this division. The petition presents the

26  following seven grounds for relief: 1) Petitioner claims he received ineffective assistance of counsel

27  for defense counsel's failure to attend a live line-up and for counsel's conflict of interest; 2) He

28  claims the trial court abused it's discretion in denying Petitioner's motion to substitute counsel; 3)

1   He claims the trial court denied his Faretta[2] request without inquiry in violation of his constitutional

2   rights; 4) He alleges the trial court denied his Marsden[3] motion without inquiry in violation of his

3   constitutional rights; 5) He contends the trial court's refusal to allow him to fully present and argue

4   the merits of his motion for new trial violated his constitutional rights; 6) He claims defense counsel

5   was incompetent during pre-trial, trial and sentencing phases in violation of his constitutional rights;

6   and 7) He claims he received ineffective assistance of appellate counsel in violation of his

7   constitutional rights. After the Court ordered briefing, Petitioner requested the petition be stayed and

8   held in abeyance. The motion was denied and Petitioner appealed to the Ninth Circuit Court of

9   Appeals. On September 1, 2005, and pending the appeal, Respondent filed an answer to the petition.

10   Petitioner filed a traverse on October 14, 2005. On June 26, 2006, the Ninth Circuit dismissed the

11   appeal for lack of jurisdiction. On August 3, 2006, Petitioner moved to correct and amend his

12   traverse. On August 28, 2006, the undersigned granted Petitioner's motion.

**FACTUAL BACKGROUND**

14   Incident of June 6, 1999 (Counts 1-3)

15          On June 6, 1999, at approximately 4:00 p.m., Rigoberto Mercado Torres ("Torres") was

16   closing his store. RT 106.[4] When he exited the store, he and his son went to his car, got in, and

17   closed the door. RT 107. Torres was carrying a money bag containing $500 in cash and $4,800 in

18   checks. RT 109. Petitioner then came up to the car, opened the door, and demanded, "Give me the

19   money, your wallet." RT 107.  Torres refused, and Petitioner put a knife to his side. RT 108.

20   Petitioner then called for Torres' son to come over, saying, "Come here, I've got something for you."

21   RT 110. Afraid that Petitioner would harm his son, Torres released the money bag. RT 110.

22   Petitioner then ran, got into a dark blue Ford Probe vehicle, and drove away. RT 111. Torres then

23   called the police. RT 112.

24          Madera Police Officer Marcie Noriega was dispatched to Torres' store. RT 153. Officer

---

26   [2]Faretta v. California, 422 U.S. 806 (1975).

27   [3]People v. Marsden, 2 Cal.3d 118 (1970).

28   [4]"RT" refers to the Reporter's Transcript on Appeal.

1   Noriega made contact with Torres and his son. RT 154. She took a statement from the victims and

2   then left the scene after it had been secured. RT 155-156. A short time later, she received a call from

3   Torres in which Torres informed her that he had spotted Petitioner's vehicle. RT 156. She then drove

4   to the location and observed a dark-colored Ford Probe. RT 156. She impounded the vehicle after

5   Torres and his son identified it. RT 157. Inside the vehicle, Officer Noriega found a knife and a

6   towel. RT 157-159. Torres identified the knife as the one used by Petitioner during the robbery and

7   the towel as the item used to conceal the knife. RT 158-159. Investigators processed the vehicle and

8   discovered latent fingerprints matching Petitioner's on the vehicle. RT 226-229, 251-256.

9   Incident of June 8, 1999 (Counts 4-5)

10          On June 8, 1999, Aurelio Castillo ("Castillo") was working at Hernandez Recycling in

11   Madera, California. RT 173-174. That afternoon, Castillo was approached by Petitioner. RT 174-

12   175. Petitioner held a knife up to Castillo and demanded, "Give me the money or else something bad

13   is going to happen to you." RT 174-175. Castillo handed him between $700 to $800 in cash. RT 175-

14   176. Petitioner then demanded all of the money from his wallet and pocket. RT 177. Castillo only

15   had keys in his pocket, so Petitioner demanded the keys to his car. RT 177. Petitioner located

16   Castillo's vehicle, a 1982 Audi 4000, and then drove away in it. RT 177-178. Castillo then reported

17   the incident to the police. RT 178-179.

18          Three days later, Petitioner appeared again at Hernandez Recycling. RT 179. Petitioner left

19   when Castillo told him he didn't have any money. RT 179-180. Castillo notified his employer, Alex

20   Hernandez ("Hernandez"), of the incident. RT 180. Hernandez told Castillo to call him with his cell

21   phone if Petitioner should reappear. RT 180, 195. Petitioner did come back, so Castillo called

22   Hernandez, who then called the police. RT 180. Hernandez drove back to his business and picked up

23   Castillo. RT 196. They drove around and spotted Petitioner riding a bicycle nearby. RT 198-199.

24   Hernandez attempted to apprehend him, but Petitioner ran away. RT 200-201.  Approximately ten

25   minutes later, Hernandez spotted Petitioner again. RT 202. Several police officers were attempting to

26   arrest him. RT 202. Hernandez approached and told the police officers that Petitioner was the person

27   who robbed the recycling center. RT 202-203.

28

**DISCUSSION**

**I.  Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises out of the Madera County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 2241(d).  Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

**II.  Legal Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63, 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

1    As a threshold matter, this Court must "first decide what constitutes 'clearly established

2 Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

3 quoting 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court

4 must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time

5 of the relevant state-court decision." Id., quoting Williams, 592 U.S. at 412. "In other words, 'clearly

6 established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by

7 the Supreme Court at the time the state court renders its decision." Id.

8    Finally, this Court must consider whether the state court's decision was "contrary to, or

9 involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72,

10 quoting 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the

11 writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

12 question of law or if the state court decides a case differently than [the] Court has on a set of

13 materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72.

14 "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state

15 court identifies the correct governing legal principle from [the] Court's decisions but unreasonably

16 applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

17    "[A] federal court may not issue the writ simply because the court concludes in its

18 independent judgment that the relevant state court decision applied clearly established federal law

19 erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A

20 federal habeas court making the "unreasonable application" inquiry should ask whether the state

21 court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

22    Petitioner has the burden of establishing that the decision of the state court is contrary to or

23 involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle,

24 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states,

25 Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court

26 decision is objectively unreasonable.  See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th

27 Cir.1999).

28    AEDPA requires that we give considerable deference to state court decisions. The state

court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

**III.  Review of Petitioner's Claims**

  **A. Grounds One, Six, Seven**

  Petitioner claims he received ineffective assistance of counsel from both his trial counsel and his appellate counsel. In Ground One, he alleges his trial counsel mishandled a live line-up. In Ground Six, he again contends trial counsel failed to investigate the live line-up. He claims counsel failed to interview three witnesses who were present at the line-up. He claims counsel failed to file a motion to suppress the line-up identification. He then alleges counsel failed to file formal discovery to obtain the tape of the initial 911 call. He further claims counsel should have filed a motion to suppress the evidence discovered in the vehicle, and a motion to dismiss the carjacking charge. He also contends counsel failed to interview or call his wife or niece as alibi witnesses. Last, he alleges counsel failed to state the grounds for a motion for new trial as requested by Petitioner. In Ground Seven, he claims appellate counsel failed to include grounds of abuse of discretion by the trial court in his appellate brief.

  The law governing ineffective assistance of counsel claims is clearly established. Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors.  Strickland v. Washington, 466 U.S. 668, 687 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687.  The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential.  A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Strickland, 466 U.S. at 687; Sanders v. Ratelle, 21

1   F.3d 1446, 1456 (9th Cir.1994).

2       Second, the petitioner must demonstrate that "there is a reasonable probability that, but for

3   counsel's unprofessional errors, the result ... would have been different." Strickland, 466 U.S. at 694.

4   Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial,

5   one whose result is reliable. Id. at 688.  The court must evaluate whether the entire trial was

6   fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78

7   F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994).

8       A court need not determine whether counsel's performance was deficient before examining

9   the prejudice suffered by the petitioner as a result of the alleged deficiencies.  Strickland, 466 U.S. at

10  697.  Since the defendant must affirmatively prove prejudice, any deficiency that does not result in

11  prejudice must necessarily fail. However, there are certain instances which are legally presumed to

12  result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of

13  counsel or where the State has interfered with counsel's assistance. Strickland, 466 U.S. at 692;

14  United States v. Cronic, 466 U.S. 648, 659, and n. 25 (1984).  Ineffective assistance of counsel

15  claims are analyzed under the "unreasonable application" prong of Williams v. Taylor, 529 U.S. 362

16  (2000).  Weighall v. Middle, 215 F.3d 1058, 1062 (2000).

17      Effective assistance of appellate counsel is also guaranteed by the Due Process Clause of the

18  Fourteenth Amendment.  Evitts v. Lucey, 469 U.S. 387, 391-405 (1985).  Claims of ineffective

19  assistance of appellate counsel are reviewed according to Strickland 's two-pronged test.  See, e.g.,

20  Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir.1989); United States v. Birtle, 792 F.2d 846, 847

21  (9th Cir.1986).  Therefore, as above, a defendant must show that appellate counsel's advice fell

22  below an objective standard of reasonableness and that there is a reasonable probability that, but for

23  counsel's unprofessional errors, defendant would have prevailed on appeal. Miller, 882 F.2d at 1434

24  & n. 9, citing, Strickland, 466 U.S. at 688, 694; Birtle, 792 F.2d at 849.  However, appellate counsel

25  does not have a constitutional duty to raise every nonfrivolous issue requested by defendant. Jones v.

26  Barnes, 463 U.S. 745, 751-54 (1983); Miller, 882 F.2d at 1434 n. 10.  The weeding out of weaker

27  issues is widely recognized as one of the hallmarks of effective appellate advocacy. Miller, 882 F.2d

28  at 1434.  As a result, appellate counsel will frequently remain above an objective standard of

1  competence and have caused his client no prejudice for the same reason - because he declined to

2  raise a weak issue. Id.

3      Petitioner's claims were first presented on collateral review to the Madera County Superior

4  Court. See Lodged Doc. No. 9. On October 9, 2003, the Madera County Superior Court summarily

5  denied the claims. Id. The claims were then presented to the Fifth DCA where they were summarily

6  denied on November 25, 2003. See Lodged Doc. No. 10. Petitioner then presented his claims to the

7  California Supreme Court, where they were summarily denied on September 9, 2004. See Lodged

8  Docs. No. 11. In a case such as this where the state court supplies no reasoned decision, this Court

9  independently reviews the record to determine whether the state court clearly erred in its application

10 of Supreme Court law. Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir.2000) ("Federal habeas review

11 is not de novo when the state court does not supply reasoning for its decision, but an independent

12 review of the record is required to determine whether the state court clearly erred in its application of

13 controlling federal law."); see also, e.g., Greene v. Lambert, 288 F.3d 1081, 1089 (9th Cir.2002).

14 Delgado v. Lewis, 223 F.3d 976, 981 (9th Cir.2000). That is, although the Court independently

15 reviews the record, it still defers to the state court's ultimate decision.

16      *1.  Line-up Investigation*

17      Petitioner first alleges defense counsel mishandled the identification procedure conducted

18 shortly after he was arrested. Michael Fitzgerald, the chief defense attorney at defense counsel's law

19 firm, was present during the line-up. When Petitioner questioned him after the line-up, Mr.

20 Fitzgerald told him that the line-up was conducted fairly and one of the witnesses, Torres, was not

21 present during the line-up. During cross-examination by Petitioner's counsel, Torres revealed that he

22 was in fact present during the line-up. RT 129. Petitioner claims these circumstances demonstrate

23 ineffective assistance of counsel. Petitioner's argument is unpersuasive.

24      First, Torres was present when the line-up was called, but he was taken out of the room to

25 look at photographs. RT 130-132. He was not present when Castillo identified Petitioner. RT 132.

26 Second, as correctly pointed out by Respondent, Petitioner has failed to demonstrate any prejudice.

27 Even though Torres was present when the line-up was called, he was not provided an opportunity to

28 make an identification at the time. RT 132. He was led out of the room and shown photographs

1  instead. RT 132. There is nothing in the record to indicate anything unusual occurred at the line-up.

2  Thus, Petitioner's claim that counsel mishandled the line-up is meritless.

3      He also claims counsel failed to investigate three witnesses who were at the line-up. This

4  claim is also baseless. Petitioner does not state what these witnesses would have testified to, whether

5  they would have testified, or how their testimony would have altered the trial. Moreover, counsel did

6  address Petitioner's request and informed him that this line of defense would serve no purpose, since

7  two of the witnesses were convicted felons and there was nothing unfair that occurred during the

8  line-up. For the same reasons, Petitioner's claim that counsel should have filed a motion to suppress

9  the identification should be rejected.

10      *2. 911 Tape*

11      Petitioner argues counsel was ineffective in failing to file formal discovery to secure a copy

12  of the 911 tape. However, defense counsel did attempt to secure the tape of a 911 call but was

13  notified that the tape had been copied over pursuant to the regular procedure at the emergency office.

14  See Lodged Doc. No. 12. In addition, she was given a copy of the transcript of the 911 call, but she

15  determined there was nothing in the transcript to merit filing a motion to suppress or dismiss

16  charges. Id. Petitioner does not show how counsel's decision was not sound. Furthermore, as

17  Respondent notes, defense counsel did move to sever the counts but this was denied. Id.

18      *3.  Motions to Suppress and Dismiss*

19      Petitioner claims counsel failed to file a motion to suppress the evidence obtained from a

20  search of Petitioner's vehicle. Counsel states she made a decision not to file a motion to suppress this

21  evidence because the motion was meritless. See Lodged Doc. No. 12. She states the evidence would

22  have been admitted as inevitable discovery. Petitioner fails to show how counsel's decision was not

23  sound strategy. Counsel cannot be expected to make frivolous motions merely because Petitioner

24  requests them.

25      Petitioner also claims counsel failed to file a motion to dismiss the carjacking charge. As to

26  this, counsel states she decided against filing such a motion because it was meritless under California

27  case law. Instead, she filed a motion to sever the charges which was denied. As above, Petitioner has

28  not shown counsel's decision to be unreasonable.

1   *4. Failure to Call Alibi Witnesses*

2   Petitioner next complains counsel failed to call Petitioner's wife and niece as alibi witnesses.

3   The record reveals counsel attempted to call them as witnesses but they were uncooperative. They

4   refused to communicate or accept service of the subpoena. In addition, they revealed that they would

5   have testified that Petitioner was not with them at the time of the offenses, so their testimony would

6   have been harmful rather than beneficial. Thus, counsel cannot be faulted for failing to call the

7   witnesses, and in any case, there was no prejudice.

8   *5. Failure to Present Petitioner's Grounds for New Trial Motion*

9   The record demonstrates that during the sentencing hearing, defense counsel notified the

10  court that Petitioner wished to make a motion for new trial. RT 365. Rather than address Petitioner's

11  motion, the court directed Petitioner to file a notice of appeal. RT 368-373. Petitioner appealed and

12  the appellate court determined the trial court erred. See Lodged Doc. No. 4. The appellate court

13  remanded the matter for purposes of holding a hearing on Petitioner's motion for new trial. On

14  remand, the superior court denied Petitioner's motion.

15  The claim is without merit. The record shows that counsel did in fact alert the court to

16  Petitioner's desire to bring the new trial motion, but it was the court which erred in failing to proceed

17  properly with the motion. The request was dismissed and Petitioner was given his appeal rights

18  instead. Therefore, Petitioner has not shown counsel erred. Moreover, the court's error was noted by

19  the appellate court and the case was remanded to hold a hearing on Petitioner's motion. On remand,

20  the motion was denied. Thus, Petitioner has not shown prejudice resulting from counsel's alleged

21  error.

22  *6. Appellate counsel*

23  Finally, Petitioner contends his appellate counsel failed to render effective assistance of

24  counsel by failing to present Petitioner's claims of ineffective assistance of trial counsel to the Fifth

25  DCA on appeal. Respondent argues the claim is not exhausted, but he waives this defense and asks

26  the Court to rule on its merits.

27  As discussed above, Petitioner's claims of ineffective assistance of counsel are without merit.

28  Therefore, he cannot demonstrate any prejudice resulting from appellate counsel's actions.

1  Moreover, Petitioner did present his claims on collateral review, which in California is the preferred

2  method for pursuing claims of ineffective assistance of counsel.

3       In sum, the rejections of these claims of ineffective assistance of counsel by the state courts

4  were neither contrary to or an unreasonable application of clearly established Federal law, nor an

5  unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d).

6  The claims should be denied.

7       **B. Ground Two**

8       Petitioner next claims the trial court abused its discretion when it denied Petitioner's motion

9  made pursuant to People v. Marsden, 2 Cal.3d 118 (1970), to appoint new counsel. A Marsden

10  hearing is held when a defendant requests that the court discharge his appointed counsel and appoint

11  another. The nature of the hearing is to determine whether the defendant's right to counsel would be

12  substantially impaired by requiring defendant to proceed with the original appointed attorney.

13  People v. Marsden, 2 C.3d 118, 123 (1970). On November 29, 1999, Petitioner filed a motion to

14  discharge his appointed counsel.

15       The denial of a motion to substitute counsel implicates a defendant's Sixth Amendment right

16  to counsel and therefore is properly considered in a habeas proceeding. Bland v. California Dep't of

17  Corrections, 20 F.3d 1469, 1475 (9th Cir.), cert. denied, 513 U.S. 947 (1994), overruled on other

18  grounds by Schell v. Witek, 218 F.3d 1017 (9th Cir.2000) (en banc). It is well settled that when a

19  criminal defendant voices a seemingly substantial complaint about counsel, the trial judge should

20  make a thorough inquiry into the reasons for the defendant's dissatisfaction. Bland, 20 F.3d at 1475-

21  76; United States v. Robinson, 913 F.2d 712, 716 (9th Cir.1990).  The Sixth Amendment, however,

22  guarantees effective assistance of counsel, not a "meaningful relationship" between an accused and

23  his counsel. Morris v. Slappy, 461 U.S. 1, 14 (1983). The ultimate inquiry in a federal habeas

24  proceeding is whether the petitioner's Sixth Amendment right to counsel was violated. Schell, 218

25  F.3d at 1024-25 (9th Cir.2000).  The habeas court considers whether the trial court's denial of or

26  failure to rule on the motion "actually violated [petitioner's] constitutional rights in that the conflict

27  between [petitioner] and his attorney had become so great that it resulted in a total lack of

28  communication or other significant impediment that resulted in turn in an attorney-client relationship

1  that fell short of that required by the Sixth Amendment." Id. at 1026.

2      The state courts on collateral review also supplied no reasoned decision with respect to this

3  claim. Therefore, the Court independently reviews the record to determine whether the state court

4  clearly erred in its application of Supreme Court law. Delgado, 223 F.3d at 982

5      On November 29, 1999, a lengthy Marsden hearing was held. 11/29/99 RT 4-29. The Court

6  inquired into Petitioner's reasons for requesting new counsel. Petitioner expressed his belief that

7  defense counsel had not represented him to the best of her ability. 11/29/99 RT 5. Petitioner's

8  complaints essentially centered on a disagreement over trial strategy, a disagreement over certain

9  motions Petitioner wanted filed, and a misunderstanding over certain evidence. Petitioner believed

10  certain witnesses who were in attendance at the live line-up should have been called to testify at his

11  trial. Defense counsel disagreed because her investigation into the line-up revealed nothing unusual

12  took place. In addition, the witnesses had criminal backgrounds and therefore would have been

13  damaging to Petitioner, or at best, not credible. With respect to the alibi witnesses, counsel stated she

14  had been attempting to subpoena them but they continued to refuse service and remained

15  uncooperative. Petitioner also complained defense counsel failed to secure the actual tape recording

16  of a 911 call. From the record, it appears defense counsel misunderstood the event to which

17  Petitioner was referring. Defense counsel believed Petitioner wanted to secure the 911 tape recording

18  of the incident when the vehicle was found, and when she checked with the District Attorney, no

19  such 911 call had been placed. 11/29/99 RT 14-15. At the Marsden hearing, Petitioner stated he

20  actually wanted the 911 recording from the initial report. When defense counsel was made aware of

21  the misunderstanding, she assured Petitioner and the Court that she would attempt to obtain the 911

22  recording. 11/29/99 RT 19-20. Finally, Petitioner argued that defense counsel failed to file

23  suppression motions regarding the line-up identification and the evidence secured from the vehicle.

24  Counsel informed the Court she had considered the motions but after conducting research

25  determined they would have been meritless. Other than these complaints, Petitioner merely voiced

26  his concern that he did not trust or have faith in defense counsel.

27      The Court fully inquired into and considered all of Petitioner's complaints and determined

28  the disagreements between counsel and defendant did not rise to the level of a complete breakdown

1   in the relationship. 11/29/99 RT 22. From this record, the Court cannot find that the state court

2   clearly erred in its decision denying this claim. In Brown v. Craven, the court held a defendant was

3   denied effective assistance of counsel because he was embroiled in an irreconcilable conflict with

4   counsel. Brown v. Craven, 424 F.2d 1166, 1170 (9th Cir. 1970). That is not the case here. True, there

5   were disagreements and misunderstandings, but such things are understandable and do not merit a

6   finding that there was a total lack of communication or significant impediment to the attorney-client

7   relationship.  Upon close examination of the record, the Court finds the trial court's inquiry into

8   defendant's complaint was adequate and that no irreconcilable conflict existed that would have

9   resulted in the denial of effective assistance of counsel.  Petitioner's claim should be rejected.

10          **C. Ground Three**

11          Petitioner further alleges the trial court erred in denying his motion to represent himself

12   pursuant to Faretta v. California, 422 U.S. 806 (1975).

13          It is well settled that a defendant has the right to represent himself pro se or to be represented

14   by an attorney. Faretta v. California, 422 U.S. 806 (1975); United States v. Halbert, 640 F.2d 1000,

15   1009 (9th Cir.1981) (per curiam). However, Petitioner's claim is without foundation. Although

16   Petitioner moved for appointment of new counsel pursuant to People v. Marsden, 2 C.3d 118, 123

17   (1970), there is nothing in the record to show he ever made a motion to represent himself pursuant to

18   Faretta. In his traverse, Petitioner argues he did in fact make such a motion. He cites to the Clerk's

19   Transcript on Appeal in support of his argument. CT 93-96.[5] The Court has reviewed the Clerk's

20   Transcript. The section he cites is the actual Marsden motion he filed on November 29, 1999. There

21   is nothing in the motion which shows he asked the Court to represent himself. Accordingly, the

22   claim should be denied.

23          **D. Ground Four**

24          Petitioner next alleges the Court denied his Marsden motion of December 1, 1999, without

25   inquiry.

26          Upon review of the record, it appears the proceeding Petitioner complains of occurred on

27

28
          _____

          [5]"CT" refers to the Clerk's Transcript on Appeal lodged by Respondent.

1   December 3, 1999. RT 43-45. During a trial confirmation hearing, Petitioner handed the court a

2   letter. The court responded to it, saying, "All right. I received your letter. Your request is denied."

3   Petitioner claims this "letter" was a <u>Marsden</u> motion. However, the record does not reflect that a

4   <u>Marsden</u> motion was made. Petitioner did not voice a request for a <u>Marsden</u> hearing, and he does not

5   submit any proof that such a request was made. Petitioner's claim is completely conclusory and

6   should be rejected as such. <u>Jones v. Gomez</u>, 66 F.3d 199, 204-05 (9th Cir.1995); <u>James v. Borg</u>, 24

7   F.3d 20, 29 (9th Cir.1994).

8        **E. Ground Five**

9        Petitioner next claims the trial court erred in refusing to allow Petitioner to fully present and

10   argue his motion for new trial on remand.

11        On January 14, 2000, Petitioner attempted to move for a new trial. The trial court declined to

12   address the motion. On direct appeal, the Fifth DCA ruled this was error and remanded the case to

13   the trial court for a hearing on Petitioner's motion for new trial on the sole issue of ineffective

14   assistance of counsel. On May 7, 2002, the trial court held this hearing, and limited consideration to

15   Petitioner's claim of ineffective assistance of counsel, as ordered by the Fifth DCA.

16        First, Petitioner's challenge is to state law rulings on state law procedure. Generally, issues of

17   state law are not cognizable on federal habeas. <u>Estelle v. McGuire</u>, 502 U.S. 62, 67, (1991) ("We

18   have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' "),

19   *quoting* <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990); <u>Gilmore v. Taylor</u>, 508 U.S. 333, 348-49 (1993)

20   (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a

21   constitutional violation, may not be corrected on federal habeas"); <u>Tinsley v. Borg</u>, 895 F.2d 520,

22   530 (9th Cir.1990), *cert. denied*, 498 U.S. 1091 (1991) ("incorrect" evidentiary rulings are not the

23   basis for federal habeas relief); <u>Oxborrow v. Eikenberry</u>, 877 F.2d 1395, 1399 (9th Cir.), *cert.*

24   *denied*, 493 U.S. 942 (1989) (Federal courts are bound by state court rulings on questions of state

25   law.).

26        Furthermore, Petitioner's argument that the trial court erred is meritless. As pointed out by

27   Respondent, the trial court merely followed the order of the Fifth DCA, which specifically remanded

28   the matter with the following directive:

"The appropriate course of action is to remand to the trial court to allow it to fully inquire into [Petitioner's] allegations concerning counsel's performance. Following the inquiry, if the trial court determines that [Petitioner] has presented a colorable claim of ineffective assistance, then the court must appoint new counsel to fully investigate and present the motion for new trial. If, on the other hand, the inquiry does not disclose a colorable claim, the motion for new trial may be denied and the judgment reinstated."

See Lodged Doc. No. 4.

As the trial court followed the instruction of the appellate court, Petitioner has failed to demonstrate an abuse of discretion. In addition, Petitioner in fact only complained of ineffective assistance of counsel during sentencing. RT 371. He did not voice any other issues. Therefore, this claim is also groundless.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days (plus three days if served by mail) after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    **January 29, 2008**                              **/s/ Sandra M. Snyder**
                                                  UNITED STATES MAGISTRATE JUDGE